**STATE of Maine**

v.

**MAINE STATE EMPLOYEES ASSOCIATION and Maine Labor Relations Board.**

Supreme Judicial Court of Maine.

Argued May 7, 1984.

Decided Oct. 5, 1984.

Julie McKinley (orally), Susan Farnsworth, Governor's Office of Employee Relations, Augusta, for plaintiff.

Shawn Keenan (orally), Maine State Employees Association, Augusta; Marc P. Ayotte (orally), Maine Labor Relations Board, Augusta, for defendants.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

NICHOLS, Justice.

On this appeal, which stems from petitions for bargaining unit clarification filed by the State of Maine with the Maine Labor Relations Board, the State urges us to find or fashion an exception to the final judgment rule to permit this appeal of an interlocutory order.

We decline to do so.

On April 23, 1980, the State filed with the Board three petitions for bargaining unit clarification, pursuant to the State Employee Labor Relations Act, 26 M.R.S.A. § 979 *et seq.* The petitions alleged that certain State employees, then in bargaining units, should be excluded from collective bargaining because they were "confidential" within the meaning of section 979–A(6)(C), as it then read.[1] After hearings, the hearing examiner issued a unit clarification report, granting the State's request for exclusion on 55 positions and rejecting it on the remaining 100 positions then in dispute.

The State appealed, and the Maine State Employees Association cross-appealed, to the Maine Labor Relations Board pursuant to 26 M.R.S.A. § 979–G(2) (Supp.1983). Meanwhile, the Legislature had amended section 979–A(6)(C) and had added two more subsections, thus broadening the exclusions for State employees from bargaining units. P.L.1981, ch. 381.[2] The State subsequently filed new unit clarification petitions affecting over 500 State employees, including 25 positions involved in its appeal from the hearing examiner's decision. Before the Board the State argued that these 25 positions should be analyzed under the new statutory standard, since "[i]t would be absurd to go through the entire case again" on the "technicality" that this standard was not in effect when the State brought its original petitions.

Accordingly, in an interim order dated June 2, 1983, the Board remanded the issue as to these 25 positions to the hearing examiner for hearings on new evidence and arguments in light of the amendments to section 979–A(6) and for a determination "as soon as is practicable" of the status of these positions under the amended law. The Board made it plain that the State's right of appeal on the positions at issue would not be lost thereby but "merely kept in abeyance" pending the remand. However, in the same decision and order, the Board also sustained the hearing examiner's rulings with respect to about 30 other positions.

On June 21, 1983, the State sought judicial review of the Board's order pursuant to M.R.Civ.P. 80B.[3] The Superior Court granted the Board's motion to dismiss on the ground that the Board's order did not constitute a final, reviewable decision. It is from that order of dismissal that the State now brings this appeal to our Court.

■ The State concedes that the order at issue was interlocutory. Generally, interlocutory orders are not appealable. *Garrison v. Finks,* 469 A.2d 440 (Me.1983); 2 Field, McKusick & Wroth, *Maine Civil Practice* § 73.1 (2d ed. 1970); *see also* 9 *Moore's Federal Practice* ¶ 110.06 et seq. (2d ed. 1983). This judicially-created rule

---

**1.** This section defined "state employees" as excluding anyone "[w]hose duties as deputy, administrative assistant or secretary necessarily imply a confidential relationship with respect to matters subject to collective bargaining as between such person and the Governor, a department head or body having appointive power within the executive department." 26 M.R.S.A. § 979–A(6)(C) (1974).

**2.** The amendment changed subsection (C) to read "Whose duties necessarily imply a confidential relationship with respect to matters subject to collective bargaining as between such person and the Governor, a department head, body having appointive power within the executive department or any other official or employee excepted by this section . . . ." The amendment also added the following subsections:

"I. Who is appointed to a major policy-influencing position as designated by Title 5, section 711, subsection 2; or

J. Who substantially participates in the formulation and effectuation of policy in a department or agency or has a major role, other than a typically supervisory role, in the administration of a collective bargaining agreement or agency."

**3.** It would appear that this action seeking judicial review of a Maine Labor Relations Board decision is governed by the Administrative Procedure Act, 5 M.R.S.A. § 11001(1), § 8002 (definitions of "agency" and "final agency action") and M.R.Civ.P. 80C, which, effective February 15, 1983, prescribes the procedure for obtaining judicial review pursuant to that Act. *But see* 26 M.R.S.A. § 979–G(2), incorporating § 972, and 26 M.R.S.A. § 979–H(7).

requiring a final judgment is equally applicable to the decrees of an administrative or quasi-judicial body. *Mechanic Falls Water Co. v. Public Utilities Commission,* 381 A.2d 1080, 1087 (Me.1977); *Department of Mental Health & Corrections v. Bowman,* 308 A.2d 586, 587 (1973).

The reasons for the final judgment rule are many and strong. It helps curtail interruption, delay, duplication and harassment; it minimizes interference with the trial process; it serves the goal of judicial economy; and it saves the appellate court from deciding issues which may ultimately be mooted, thus not only leaving a crisper, more comprehensible record for review in the end but also in many cases avoiding an appeal altogether. *See generally* 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3907 (1976).

The exceptions to the final judgment rule which we have recognized are few, narrow and well-defined. *See generally* 2 Field, McKusick & Wroth, *Maine Civil Practice* §§ 73.2–73.4a (2d ed. 1970 & Supp.1981). The State asserts that three such exceptions apply here: the "death knell" exception, the "collateral order" exception, and the "judicial economy" exception.

The death knell exception permits judicial review "when failure to do so would preclude any effective review or would result in irreparable injury." *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 441, 76 S.Ct. 895, 902, 100 L.Ed. 1297 (1956) (Frankfurter, J., concurring in part); *see generally* 15 Wright, Miller & Cooper, *Federal Practice and Procedure, supra* at § 3912. Heretofore we have invoked this principle to grant emergency review where the appellant would obviously suffer irreparable harm otherwise and the issue pressed on appeal would be effectively mooted if not immediately addressed. *Plumbago Mining Corp. v. Sweatt,* 444 A.2d 361, 368 (Me.1982); *Connors v. Inter-*

*national Harvester Co.,* 437 A.2d 880, 881 (Me.1981); *Moffett v. City of Portland,* 400 A.2d 340 (Me.1979).[4]

In the case before us, however, the State has offered no evidence of any irreparable injury that would befall it if review of the Board's order were denied at this time. The only effect of the remand order on the parties was to protract the maintenance of the status quo. Moreover, the State will not have lost the opportunity to challenge the remand order on appeal once the Board has made a final disposition of this case. No "death knell" will sound if the State fails to obtain immediate appellate review.

We have also had occasion to make an exception to the final judgment rule for collateral orders. *See Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). An order is deemed within the exception if (1) it is a final determination of a claim separable from the gravamen of the litigation; (2) it presents a major unsettled question of law; and (3) it would result in irreparable loss of the rights claimed, absent immediate review. *Hanley v. Evans,* 443 A.2d 65 (Me. 1982).

The State contends that this remand order is separable from the gravamen of the litigation, inasmuch as the issues arising from the 1981 amendments were not raised in the original hearings; but it cannot argue that the remand constitutes a final determination of a claim. Moreover, as noted above, the order does not threaten the State with the irreparable loss of a claimed right. Thus, at least two of the three prongs of the collateral order test are not satisfied.

On occasion the interests of judicial economy may constitute a third exception to the final judgment rule. *See Milstar Manufacturing Corp. v. Waterville Urban Renewal Authority,* 351 A.2d 538 (Me.1976); *Packard v. Whitten,* 274 A.2d 169 (Me.

---

**4.** *But see Crafts v. Quinn,* —— A.2d ——, No. 3604 (Me. Sept. 28, 1984) (death knell doctrine found inapplicable).

1971). This exception is reserved for those rare cases in which appellate review of a non-final order can establish a final, or practically final, disposition of the entire litigation. *Id.; see generally* 2 Field, McKusick & Wroth, *Maine Civil Practice* § 73.4a (Supp.1984).

Given the current posture of the case before us, it is most unlikely that judicial review of the administrative proceedings at this juncture would settle the matters in dispute with any finality. These proceedings were initiated, and hearings were held, under a statute that has since been significantly modified. It would be premature and entirely unwarranted for a court to decide the issues raised in these proceedings under the amended law before these issues have been sifted through the proper administrative channels. This Court has no authority to render advisory opinions except under the special conditions permitted the justices of this Court by the Maine Constitution. *Opinion of the Justices*, 460 A.2d 1341, 1345–46 (Me.1982); Me. Const. art. IV, § 3. To review the disputed positions under the pre-1981 law, on the other hand, would not finally resolve the litigation; the status of these positions under the current law would still be in dispute. Such review at this time, therefore, would ill-serve the goal of judicial economy.

■ As the foregoing analysis indicates, the remand order here comes under no previously recognized exception to the final judgment rule. Of course, we may create an additional exception where extraordinary circumstances warrant it. *See Bar Harbor Banking & Trust Co. v. Alexander*, 411 A.2d 74 (Me.1980). This is not that extraordinary case.

■ The Maine State Employees Association joins the Board in considering the 25 positions directly affected by the remand order to be unripe for review but takes the position that the issue as to the 30 other positions on which the Board ruled without remanding was ready for immediate review. However, to fragment this case and carve out certain claims for purposes of review would contravene our strong policy never to treat a decision on fewer than all the claims in multi-claim or multi-party litigation as a final judgment unless it is explicitly designated as such. M.R.Civ.P. 54(b); M.D.C.Civ.P. 54; M.R.Prob.P. 54(b); M.Admin.C.R. 54(b).

The entry, therefore, must be:

Judgment of dismissal affirmed.

All concurring.