2000 ME 178

**Michael MILLETT et al.**

v.

**ATLANTIC RICHFIELD CO. et al.**

Supreme Judicial Court of Maine.

Argued Sept. 7, 2000.
Decided Oct. 23, 2000.

10.  12 M.R.S.A. §§ 571–573 (1994).

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, ALEXANDER, SAUFLEY and CALKINS, JJ.

CALKINS, J.

[¶ 1] Michael Millett and other named plaintiffs appeal from the order of the Superior Court (Cumberland County, *Cole, J.*) denying their motion for class certification. There is no final judgment in this matter. The immediate appealability of an order denying a motion for class certification is an issue of first impression in Maine. We conclude that such appeals are interlocutory and that this case does not come within any of the recognized exceptions to the final judgment rule. Accordingly, we dismiss the appeal.

## I. PARTIES AND FACTS

[¶ 2] The five named plaintiffs own or have an interest in real estate in Maine. They all have wells from which they obtain groundwater for drinking and household purposes. The well water of three of the named plaintiffs has been tested and found to contain the gasoline additive, methyl-tertiary-butyl ether, commonly known as MTBE, at levels in excess of that considered safe for drinking. Two of the named plaintiffs have wells which have not been tested. The defendants are Atlantic Richfield Company (ARCO) and its subsidiaries, ARCO Chemical Company and Lyondell Chemical Company.

[¶ 3] The salient facts presented by the plaintiffs for purposes of the class certification motion are as follows. MTBE is a chemical oxygenate, first produced by ARCO Chemical in the 1960s, but not produced commercially until 1979 when it was added to gasoline in low concentrations to boost octane. To meet the requirements of the Clean Air Act, 42 U.S.C.A. §§ 7401–7671q (1995 & Supp.2000), the Environmental Protection Agency and the petroleum industry worked together to develop MTBE RFG, which is reformulated gasoline with higher concentrations of MTBE. MTBE RFG increases the oxygen content

Jon Hinck (orally), Lewis J. Saul, Jennifer Martin Frank, Lewis Saul & Assoc., P.C., Portland, William D. Robitzek, Berman & Simmons, P.A., Lewiston, for plaintiff.

William J. Kayatta Jr. (orally), John J. Aromando, David P. Littell, Pierce Atwood, Portland, Alan J. Hoffman, Blank Rome Cominsky & McCauley, Philadelphia, PA, for ARCO Chemical and Lyondell Chemical.

Randall B. Weill, Jonathan S. Piper, Preti Flaherty Beliveau Pachios & Haley, LLC, Portland, for Atlantic Richfield.

Mark G. Lavoie, Thomas S. Majerison, Norman Hanson & DeTroy, Portland, for George Smith.

Peter J. Rubin, Jeffrey A. Thaler, Bernstein Shur Sawyer & Nelson, Portland, for Oxygenated Fuels Assn.

Joseph H Groff III, Brendan Reilly, Jensen Baird Gardner & Henry, Portland, for American Petroleum Inst.

of gasoline enabling it to burn cleaner with reduced levels of volatile organic compounds. Pursuant to the Clean Air Act, Maine "opted in" seven counties to the reformulated gasoline program, effective January 1, 1995. This meant that only MTBE RFG could be sold by the gasoline stations in those seven counties. Actual sales of MTBE RFG began in Maine in November 1994. Gas stations outside of the seven counties also sold MTBE RFG because they found it difficult to obtain other gasoline from suppliers.

[¶ 4] MTBE is very soluble in water and, when spilled, spreads farther and faster than other components of gasoline. In 1998 several incidents of well contamination in Maine were reported. Health officials randomly tested 951 household wells and 793 public water sources, and they found MTBE in 15.8% of the tested wells and water sources. Of these, 1.1% had MTBE levels exceeding the Maine drinking water standard of 35 parts per billion.

[¶ 5] The complaint alleges seven causes of action: (1) strict liability for failure to warn; (2) strict liability for misrepresentations; (3) unfair and deceptive trade practice; (4) negligence; (5) negligent misrepresentation; (6) civil conspiracy; and (7) fraud. Among other contentions, the plaintiffs allege that ARCO and its subsidiaries knew that MTBE posed a danger to groundwater; misrepresented that danger; failed to warn others of the danger; and engaged in a conspiracy regarding the misrepresentation and failure to warn.

[¶ 6] The named plaintiffs seek to bring this action on behalf of two subclasses. The first subclass is the "Verified Contaminated Well Subclass" which is composed of:

> all persons or entities who during the class period from November 1, 1994 to present owned or had an interest in property in Maine and were consumers, other than resellers, of Defendants' MTBE or MTBE RFG and have had water tests verifying that their well or

ground water is contaminated with MTBE in unacceptable concentrations.

The plaintiffs seek to certify this first subclass pursuant to M.R. Civ. P. 23(b)(3). They request monetary relief from the defendants for property damage caused by MTBE. The second subclass is the "Untested Well Subclass" which is composed of:

> all persons or entities who presently own or have an interest in property in Maine, and who 1) have been consumers, other than resellers, of Defendants' MTBE or MTBE RFG; 2) rely on ground water from the property for drinking and/or other household uses[;] and 3) have not had their water tested for the presence of MTBE.

The plaintiffs seek to certify the second subclass pursuant to M.R. Civ. P. 23(b)(2). They request an injunction requiring the defendants to establish a fund to test and monitor their wells. The plaintiffs exclude from the definition of both subclasses any persons who have received personal injuries.

[¶ 7] The Superior Court found that the plaintiffs meet the numerosity, commonality, and typicality requirements of M.R. Civ. P. 23(a)(1), (2), and (3). The court found that plaintiffs' attorneys can adequately represent the class, but it found that the named plaintiffs are inadequate representatives of their respective subclasses. The court found that the Contaminated Well Subclass does not meet the requirements of M.R. Civ. P. 23(b)(3) because the common questions of law and fact do not predominate over the issues in each individual's case of reliance, causation, comparative negligence, damages, and identification of suppliers of MTBE. The trial court held that these individual issues also mean that the class action is not superior to the individual action. The court found that the Untested Well Subclass does not meet the requirements of Rule 23(b)(2) because it concluded that the plaintiffs in that subclass are primarily seeking monetary relief by requesting the

defendants to pay for testing of their wells. For these reasons, the Superior Court denied class certification. The plaintiffs appeal from that denial, and the defendants request this Court to dismiss the appeal on the ground that there is no final judgment.

## II. FINAL JUDGMENT RULE

[¶ 8] Only final judgments are appealable except in a few narrow circumstances. *See State v. Maine State Employees Ass'n,* 482 A.2d 461, 464 (Me.1984). The final judgment rule prevents piecemeal litigation, and

> "helps curtail interruption, delay, duplication and harassment; it minimizes interference with the trial process; it serves the goal of judicial economy; and it saves the appellate court from deciding issues which may ultimately be mooted, thus not only leaving a crisper, more comprehensible record for review in the end but also in many cases avoiding an appeal altogether."

*Id.* In this case the plaintiffs argue that two exceptions to the final judgment rule are applicable: the death knell exception and the judicial economy exception.[1]

### A. Death Knell Exception

[¶ 9] An exception to the final judgment rule allows the appeal of an interlocutory order when that order operates as a "death knell" to the action. The death knell doctrine is a federal invention devised exactly for the situation in this case: the denial of class certification. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); 15A CHARLES A. WRIGHT, ET AL., FEDERAL PRAC-TICE AND PROCEDURE §§ 3911, 3912 at 338, 451 (2d ed.1992).

[¶ 10] In Maine, the death knell doctrine has been applied in a handful of cases, and none involve a situation resembling the denial of a class certification. "The death knell exception 'permits an appeal from an interlocutory order where substantial rights of a party will be irreparably lost if review is delayed until final judgment.'" *Andrews v. Dep't of Envtl. Prot.,* 1998 ME 198, ¶ 4, 716 A.2d 212, 215 (quoting *Cook v. Cook,* 574 A.2d 1353, 1354 (Me.1990)). In *Andrews,* the defendants appealed from a denial of summary judgment in which the defendants claimed immunity, and we agreed that a denial of immunity was entitled to immediate review under the death knell doctrine. *Id.* In *Cook,* we permitted an appeal from a foreclosure judgment, which was not final because of a pending counterclaim, but we found that, in the particular circumstances of that case, the foreclosure judgment precluded relief on the counterclaim. *Cook,* 574 A.2d at 1354. *See also Moffett v. City of Portland,* 400 A.2d 340, 343 n. 8 (Me. 1979) (permitting appeal from denial of preliminary injunction which sought to enjoin public disclosure of records claimed to be confidential).

[¶ 11] The dominant case concerning the immediate appealability of orders denying class certification is *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). In that case the Supreme Court determined that such appeals are interlocutory and not immediately reviewable. Because the federal class action rule, F.R. Civ. P. 23,[2] was identical in all

---

**1.** The plaintiffs have not argued that the collateral order exception applies. In *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), discussed *infra,* the plaintiffs argued that their appeal from a denial of class certification came within the collateral order exception, but the Court rejected that argument because a class action order is always subject to revision pursuant to F.R. Civ. P. 23(c)(1); because it involves consideration of the factual and legal questions of the plaintiffs' cause of action; and because

the denial of class certification can be appealed at the end of the case. *See id.* at 469, 98 S.Ct. 2454.

**2.** F.R. Civ. P. 23 has been recently amended by the addition of paragraph (f), F.R. Civ. P. 23(f), which became effective December 1, 1998, states:

> A court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certi-

respects to Maine's current class action rule, the *Coopers & Lybrand* case is persuasive authority. The Supreme Court noted that the death knell exception is utilized only when the interlocutory order has the effect of ending the litigation. *See id.* at 471, 98 S.Ct. 2454. For this reason, the death knell doctrine had caused appellate courts to determine whether the named plaintiff was able to proceed with the class action as an individual action. This determination, in turn, caused plaintiffs to make a record in the trial courts of their inabilities to carry forward with the litigation, and it required trial courts to make such findings. The Supreme Court considered this approach to "have a serious debilitating effect on the administration of justice." *Id.* at 473, 98 S.Ct. 2454. The Court also stated that allowing such appeals potentially subjects the appellate court to hearing multiple appeals in the case. *See id.* at 474, 98 S.Ct. 2454.[3]

[¶ 12] Several jurisdictions with class action rules identical to or based on F.R. Civ. P. 23 follow the reasoning of *Coopers & Lybrand* and hold that class certification denials are not an exception to the final judgment rule and are not immediately appealable.[4] Other state courts hold that

---

fication under this rule if application is made to it within ten days after entry of the order. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

For an interpretation of F.R. Civ. P. 23(f), *see Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288 (1st Cir.2000). Maine's class action rule does not contain a provision similar to F.R. Civ. P. 23(f).

**3.** The Court also noted that a federal statute permits a discretionary appeal from interlocutory orders such as a denial of class certification. *See Coopers & Lybrand,* 437 U.S. at 474, 98 S.Ct. 2454. The Interlocutory Appeals Act of 1958, Pub.L. No. 85–919, 72 Stat. 1770 (1958), (codified at 28 U.S.C.A. § 1292(b) (1993)) reads as follows:

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

Maine does not have such a statute, but we have at least two procedural rules for appealing from an otherwise nonfinal order. *See* M.R. Civ. P. 54(b) (authorizing the trial court to direct, as final, the entry of a judgment on fewer than all claims or as to fewer than all parties, upon the express determination that there is no reason for delay); M.R. Civ. P. 72(c) (permitting the trial court to report any question of law involved in an interlocutory ruling which in the opinion of the trial court ought to be determined before further proceedings). The plaintiffs did not attempt to utilize either rule.

**4.** *See Levy v. Metro. Sanitary Dist. of Greater Chicago,* 92 Ill.2d 80, 65 Ill.Dec. 26, 440 N.E.2d 881, 882 (1982) (holding dismissal of class action allegations interlocutory and not appealable as of right and remanding to determine if rule allowing discretionary appeal is applicable); *Bellarmine College v. Hornung,* 662 S.W.2d 847, 849 (Ky.Ct.App.1983) (holding defendant class certification interlocutory and not appealable); *Snowden v. Baltimore Gas & Elec. Co.,* 300 Md. 555, 479 A.2d 1329, 1330 (1984) (holding dismissal of action as to unnamed plaintiffs interlocutory and not appealable even though trial court directed entry of final judgment pursuant to equivalent of F.R. Civ. P. 54(b)) (*but see Philip Morris, Inc. v. Angeletti,* 358 Md. 689, 752 A.2d 200, 217–18 (2000) (issuing writ of mandamus to review grant of class certification, recognizing that such orders ordinarily nonfinal and not appealable)): *In re Objections and Defenses to Real Property Taxes for 1980 Assessment,* 320 N.W.2d 729, 731 (Minn.1982) (holding denial of class certification not appealable as of right); *Ralph v. Am. Family Mut. Ins. Co.,* 809 S.W.2d 173, 175 (Mo.Ct.App.1991) (holding denial of class certification interlocutory and not appealable) (*but see State ex rel. Byrd v. Chadwick,* 956 S.W.2d 369, 383, 386, 387 (Mo.Ct.App.1997) (issuing writ of mandamus vacating trial court's preliminary approval of temporary settlement class on grounds that

class certification orders are interlocutory but immediately appealable pursuant to a statute or rule permitting such appeals as a matter of right or as a matter of discretion.[5] Still other jurisdictions hold that orders denying class certification are final and appealable, *see Daar v. Yellow Cab Co.*, 67 Cal.2d 695, 63 Cal.Rptr. 724, 433 P.2d 732, 736 (1967), or treat such orders as final when the trial court certifies them as final pursuant to equivalents of F.R. Civ. P. 54(b), *see Levine v. Empire Sav. and Loan Ass'n*, 192 Colo. 188, 557 P.2d 386, 387 (1976) and *Martin v. Amoco Oil Co.*, 696 N.E.2d 383, 385–86 (Ind.), *cert. denied*, 525 U.S. 1049, 119 S.Ct. 608, 142 L.Ed.2d 548 (1998). The Alabama Supreme Court stands alone in expressly rejecting the reasoning of *Coopers & Lybrand* and holding that class certification orders are final. *See Butler v. Audio/Video*

*eo Affiliates, Inc.*, 611 So.2d 330 (Ala.1992). The majority rule is that denials of class certification are interlocutory orders and are not immediately appealable in the absence of a state statute or rule either expressly authorizing appeals from class certification orders or generally authorizing appeals from interlocutory orders.

■ [¶ 13] In examining the rationale of the death knell exception, we conclude that it is inapplicable to the order denying class certification in this case. The basis for applying the death knell exception to class certification denials is that without class certification the litigation will end either because the named plaintiffs' claims are so small or because their resources are too minimal to allow them to proceed with the case in the absence of the prospect of class recovery. In this case our attention has

trial court had not decided appropriateness of class and that notice to temporary class was inadequate)); *Lake v. Piper, Jaffray and Hopwood, Inc.*, 212 Neb. 570, 324 N.W.2d 660, 662 (1982) (holding order dismissing class allegations interlocutory and not appealable); *Knowles v. Standard Sav. and Loan Ass'n*, 274 S.C. 58, 261 S.E.2d 49, 49 (1979) (dismissing appeal of class certification as interlocutory); *Smith v. Tobin*, 311 N.W.2d 209, 211 (S.D. 1981) (holding denial of class certification interlocutory and not appealable); *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990) (holding denial of class certification interlocutory and not appealable even though trial court directed entry of final judgment pursuant to equivalent of F.R. Civ. P. 54(b)).

5. *See Nolan v. Sea Airmotive, Inc.*, 627 P.2d 1035, 1038 (Alaska 1981) (allowing appeal of class certification order pursuant to appeal rule permitting discretionary review of interlocutory orders of substance and importance); *Reader v. Magma–Superior Copper Co.*, 108 Ariz. 186, 494 P.2d 708, 709 (1972) (allowing appeal from denial of class certification pursuant to statute permitting appeals from orders affecting substantial rights) (*but see Eaton v. Unified Sch. Dist. No. 1 of Pima County*, 122 Ariz. 391, 595 P.2d 183, 184–85 (Ariz.Ct. App.1979) (dismissing appeal from certification of defendant class as interlocutory and not appealable and distinguishing *Reader* on ground that *Reader* involved denial of class certification)); *Arkansas State Bd. of Educ. v. Magnolia Sch. Dist. No. 14 of Columbia County*, 298 Ark. 603, 769 S.W.2d 419, 419 (1989)

(allowing appeal from class certification pursuant to appellate rule); *Aetna Cas. & Sur. Co. v. Cantrell*, 197 Ga.App. 672, 399 S.E.2d 237, 238 (1990) (allowing appeal from class certification which trial court certified for immediate review); *Martin v. Amana Refrigeration, Inc.*, 435 N.W.2d 364, 366 (Iowa 1989) (allowing appeal from class certification pursuant to rule specifically allowing appeal from class certification order); *Carr v. GAF, Inc.*, 702 So.2d 1384, 1385 (La.1997) (noting that appeals from grant of class certification are appealable pursuant to rule permitting appeals from interlocutory orders which cause irreparable injury); *Faulkenbury v. Teachers' and State Employees' Ret. Sys. of N. Carolina*, 108 N.C.App. 357, 424 S.E.2d 420, 429 (1993) (granting discretionary appeal from order granting class certification pursuant to North Carolina appellate rule); *Rogelstad v. Farmers Union Grain Terminal Ass'n, Inc.* 224 N.W.2d 544, 548 (N.D.1974) (allowing appeal from denial of class certification pursuant to statute permitting appeals from orders affecting substantial rights); *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734, 736 (1975) (holding class certification orders as final for purposes of an appeal statute) (*but see Hanson v. Fed. Signal Corp.*, 451 Pa.Super. 260, 679 A.2d 785, 787 (1996) (noting amendments to appeal statute and interpreting *Bell* as holding that such orders come within the collateral order exception to final judgment rule)); *McAllen Med. Ctr. v. Cortez*, 17 S.W.3d 305, 308 (Tex.App.2000) (noting that class certification order is appealable pursuant to statute).

not been called to anything in the record regarding the financial resources of the named plaintiffs or the size of their claims. They do not aver that they are unable to proceed in the absence of class certification, and they have not attempted to demonstrate that they will not be able to proceed with the case.

[¶ 14] The plaintiffs contend that we should view the death knell from the position of the unnamed plaintiffs. The California Supreme Court views the denial of class certification as the death of the action for the unnamed plaintiffs. *See Daar*, 63 Cal.Rptr. 724, 433 P.2d at 736. The United States Supreme Court, on the other hand, considers the death knell from the perspective of the named plaintiffs and sees the issue as whether the denial of class certification ends the entire case. *See Coopers & Lybrand*, 437 U.S. at 470–71, 98 S.Ct. 2454.

[¶ 15] It makes less sense to focus on the death of the unnamed plaintiffs' claims because the unnamed plaintiffs are not foreclosed from bringing their own action or from seeking to be added as a named plaintiff to the instant action. However, if the named plaintiffs are truly unable to proceed with the case because the certification is denied, the action will have to be dismissed, either voluntarily or involuntarily, and, for them, the case is dead. For this reason, we view the death knell doctrine from the position of the named plaintiffs. Because in this case there is nothing in the record to indicate that the named plaintiffs are unable or unwilling to proceed with the action, the result of the denial of class certification is not the death of this action. The death knell exception to the final judgment rule is not applicable to this case.[6]

### B. Judicial Economy Exception

■ [¶ 16] The judicial economy exception to the final judgment rule is appropri-

ate when a "review of a non-final order can establish a final, or practically final, disposition of the entire litigation and the interests of justice require that immediate review be undertaken." *Dep't of Human Servs. v. Lowatchie*, 569 A.2d 197, 199 (Me.1990) (quotations and citations omitted).

■ [¶ 17] If we were to accept this appeal and rule that the trial court erred in denying class certification, the case would resume as a class action. Class certifications are always subject to alteration or amendment until final judgment is entered. *See* M.R. Civ. P. 23(c)(1). Presumably, any modifications to the class description or division of a subclass into additional subclasses or decertification of one or all subclasses would be subject to immediate appeal in the same way that the first order denying the class certification is appealable. Therefore, there is the potential for several time-consuming appeals as the litigation progresses. Furthermore, if we accept this appeal and affirm the denial of class certification, the rationale behind the judicial economy exception will not be satisfied because in all likelihood the affirmance will not end the litigation given that the named plaintiffs have not made any indication to the trial court or us that the action will terminate as to them. In other words, this appeal will not "establish a final, or practically final, disposition of the entire litigation." *Lowatchie*, 569 A.2d at 199 (quotations and citation omitted). If the case proceeds to the merits, the losing party will be entitled to an appeal. Thus, regardless of the disposition of this appeal, if accepted, there is potential for seeing the case again on appeal, and the goal of avoiding piecemeal appeals is not obtained. Judicial economy is not served by taking this appeal.

---

**6.** If the named plaintiffs go forward and succeed on the merits, they would be able to appeal the denial of their class certification after the final judgment is entered. If they choose not to appeal that issue, it is likely that unnamed class members would want to take advantage of the successful outcome and initiate their own action. If the named plaintiffs in the instant action lose on the merits, they will be able to appeal the class certification issue at that time.