2000 ME 86

**In re ADOPTION OF MATTHEW R.**

Supreme Judicial Court of Maine.

Argued May 1, 2000.
Decided May 16, 2000.

Andrew Ketterer, Attorney General, Matthew Pollack, Asst. Attorney General (orally), Marina E. Thibeau, Asst. Attorney General, Christopher C. Leighton, Asst. Attorney General, Augusta, for appellant.

Clark D. Kimball (orally), Carver, Kimball & Baiungo, Belfast, for Earl and Bonnie L.

Jay H. Otis, Brewer, for Karen F.

Clare Godholm, Belfast, Guardian ad Litem.

Before CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER and CALKINS, JJ.

CALKINS, J.

[¶ 1] The Department of Human Services (DHS) appeals from the order of the Waldo County Probate Court (*Mallioux, J.*) finding that DHS unreasonably withheld its consent to the adoption of Matthew R. by Earl and Bonnie L. *See* 18–A M.R.S.A. § 9–302(a)(3) (1998). Because the order is interlocutory and no exceptions to the final judgment rule apply, we dismiss the appeal.

## I. FACTS

[¶ 2] Matthew was born prematurely on August 6, 1998, and spent his first three months in the hospital. On October 28, 1998, the District Court (Belfast, *Anderson, J.*) entered an order of preliminary child protection granting custody of Matthew to DHS. Matthew was placed in the therapeutic foster home of Karen F. On November 4, 1998, Matthew's mother, Christina R., consented to a preliminary child protection order, and Matthew remained in the custody of DHS.

[¶ 3] On December 8, 1998, Christina's relatives, Earl and Bonnie L., moved to intervene in the District Court proceedings.[1] On January 19, 1999, Earl and Bonnie filed a petition in the Waldo County Probate Court to adopt Matthew.[2] Christina consented to the petition. The District Court *(Vafiades, J.)* issued a final child protection order in August 1999, granting custody of Matthew to DHS and relieving DHS of reunification efforts with Christina. Matthew's foster parent, Karen, filed an adoption petition in the Waldo County Probate Court, and the court consolidated the two competing adoption petitions. DHS refused to consent to the adoption petition filed by Earl and Bonnie, and on October 21, 1999, the Probate Court held a hearing to determine whether DHS unreasonably withheld its consent.[3]

## II. FINAL JUDGMENT RULE

[¶ 4] "Generally, only final judgments are ripe for appellate review." *Musson v. Godley*, 1999 ME 193, ¶ 5, 742 A.2d 479, 481. "The final judgment rule is a prudential rule, designed to avoid piecemeal litigation and to preserve our limited judicial resources." *Moore v. Central Maine Power Co.*, 673 A.2d 699, 701 (Me. 1996). It is a judicially-created rule to which we have long adhered. *See State v. Maine State Employees Ass'n*, 482 A.2d 461, 463–64 (Me.1984); *Fidelity & Cas. Co. v. Bodwell Granite Co.*, 102 Me. 148, 152, 66 A. 314, 316 (1906).

[¶ 5] The Probate Court's finding that DHS unreasonably withheld consent to Matthew's adoption is not a final judgment.

An appeal is final, as opposed to interlocutory, if (1) the trial court's action fully decides and disposes of the whole matter leaving nothing further for the consideration and judgment of the trial court; and (2) no subsequent proceedings in the case will render the appellate court's decision immaterial.

*In re Erica B.*, 520 A.2d 342, 343–44 (Me. 1987). In this case there has been no final decree of adoption entered by the Probate Court. *See* 18–A M.R.S.A. § 9–308 (1998). Regardless of the outcome of this appeal, there will be further proceedings in the Probate Court in which DHS, as the custodian of Matthew, will be a participant. If

1. The motion to intervene was withdrawn, and a later motion to intervene was denied by the District Court *(Vafiades, J.)*.

2. At about the same time, Earl and Bonnie obtained guardianship of Christina's seven-year-old son who was also the subject of a child protection proceeding. The older son began living with Earl and Bonnie in January 1999, and he has since been adopted by them.

3. The relevant subsection of the Probate Code states that before an adoption is granted, written consent must be given by:

(3) The person or agency having legal custody or guardianship of the child or to whom the child has been surrendered and released, except that the person's or agency's lack of consent, if adjudged unreasonable by a judge of probate, may be overruled by the judge. In order for the judge to find that the person or agency acted unreasonably in withholding consent, the petitioner must prove, by a preponderance of the evidence, that the person or agency acted unreasonably. The court may hold a pretrial conference to determine who will proceed. The court' may determine that even though the burden of proof is on the petitioner, the person or agency should proceed if the person or agency has important facts necessary to the petitioner in presenting the petitioner's case. The judge shall consider the following:
(i) Whether the person or agency determined the needs and interests of the child;
(ii) Whether the person or agency determined the ability of the petitioner and other prospective families to meet the child's needs;
(iii) Whether the person or agency made the decision consistent with the facts;
(iv) Whether the harm of removing the child from the child's current placement outweighs any inadequacies of that placement; and
(v) All other factors that have a bearing on a determination of the reasonableness of the person's or agency's decision in withholding consent[.]
18–A M.R.S.A. § 9–302(a)(3) (1998).

the Probate Court grants Karen's adoption petition, DHS will have no reason to appeal from the order finding its withholding of consent to the relatives' adoption petition unreasonable. The final judgment rule exists to prevent needless appeals which may be rendered meaningless by further proceedings in the trial court. *See Erica B.*, 520 A.2d at 343.

▇ [¶ 6] DHS argues that the Probate Code provides an exception to the final judgment rule by allowing an appeal from "any order" of the Probate Court in an adoption proceeding. The Probate Code provides:

> Appeals from all final judgments, orders and decrees of the court shall lie to the Supreme Judicial Court, sitting as the law court, as in other civil actions.

18–A M.R.S.A. § 1–308 (1997). The adoption article of the Probate Code further states:

> (a) Any party may appeal from any order entered under this article to the Supreme Judicial Court sitting as the Law Court, as in other civil actions, . . . .

18–A M.R.S.A. § 9–309 (1998).

[¶ 7] We conclude that these statutes do not create an exception to the final judgment rule. Instead, the Legislature demonstrated its intention that the final judgment rule be followed in probate matters, including adoptions, by its utilization of the phrase "as in other civil actions" in the appeal statutes. In other civil actions, appeals are authorized only from final judgments unless one of the exceptions to the final judgment rule applies. *See Department of Human Servs. v. Lowatchie*, 569 A.2d 197, 199 (Me.1990).[4]

▇ [¶ 8] This case does not fit within one of the "few, narrow and well-defined" exceptions to the final judgment

rule. *Maine State Employees Ass'n*, 482 A.2d at 464. The most common of these exceptions are the "death knell" exception, the "collateral order" exception, and the "judicial economy" exception. *See id.* The inapplicability of the death knell and collateral order exceptions is obvious. Likewise, the judicial economy exception does not assist DHS. This exception "is reserved for those rare cases in which appellate review of a nonfinal order can establish a final or practically final, disposition of the entire litigation." *Id.* at 465. Because the Probate Court must hold further proceedings, our decision cannot create a final, or near final, disposition of this case. Judicial economy is hampered, rather then aided by this appeal, which has prolonged the time that Matthew must wait for adoption.[5]

The entry is:

Appeal dismissed. Remanded to the Waldo County Probate Court.

---

4. The general statute authorizing appeals in civil cases contains no language limiting appeals to final judgments. It speaks of "any judgment, ruling or order." 14 M.R.S.A. § 1851 (1980). It has not been interpreted as eliminating the judge-made final judgment requirement.

5. We note that this interlocutory appeal may have been prevented if the Probate Court had not bifurcated the hearing on the consent issue from the hearing on the petitions themselves.